## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ANTHONY VEGA, | : | Civil No. 1:21-CV-01193 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

Before the court is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 filed by John Anthony Vega ("Petitioner"). (Doc. 1.)  The court notes that the petition does not actually raise grounds for the petition, but repeatedly states that Petitioner reserves the right to amend the grounds for his petition.  (*Id.*, pp. 5–10.)[1] Petitioner states that he completed the petition in this manner because he was days away from the deadline to timely file and had little access to the law library and his legal materials.  (Doc. 6.)  He later filed a motion to amend the petition on July 16, 2021.  (*Id.*)  Petitioner did not support his motion to amend the petition with a brief in support.  *See* Local Rule 7.5.  The parties proceeded in this action addressing the sole issue raised in the Petitioner's Pennsylvania Post Conviction Relief Act ("PCRA") petition, ineffective assistance of counsel for failing to call an alibi witness and pursue an alibi defense.  (Docs. 16, 23.)  Therefore, the court will

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

deem the motion to amend as withdrawn as required under Local Rule 7.5 and

liberally construe the petition as raising an ineffective assistance of counsel

challenge.  Upon review of Petitioner's claim, the court will dismiss the ineffective

assistance of counsel challenge, and, thus, the petition.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court adopts the facts as summarized by the Pennsylvania Superior

Court in its May 15, 2014 decision on appeal of the criminal conviction and copied

in the same court's May 20, 2021 decision affirming the denial of Petitioner's

PCRA petition:

> Evidence at trial established that on two separate dates an intruder broke
> into [the victim's] home during the early morning hours and sexually
> assaulted her. At the time of these assaults, [the victim] was a seventy-
> seven[-]year-old widow. The assaults occurred on October 21, 2007
> ("2007 assault")[,] and May 31, 2008 ("2008 assault").
>
> On October 21, 2007, [the victim] was in the living room of her home
> in Palmerton, Carbon County, Pennsylvania[,] watching television. At
> around one o'clock in the morning, she left the living room to use the
> bathroom. During this time, a masked intruder entered the home and
> followed her into the bathroom. [The victim] testified that the intruder
> was wearing all black and a mask from the movie Scream. Further, [the
> victim] testified that the intruder was around five[-]foot[,] seven [inches
> tall,] and spoke with a slight Spanish or Puerto Rican accent. Testimony
> at trial showed that this description matched [Vega].
>
> Inside the bathroom, the intruder told [the victim] "he came to rape
> her." The intruder then approached [the victim] and a struggle began
> causing both the intruder and [the victim] to fall to the floor. Once on
> the floor, [the victim] continued to resist. This notwithstanding, the
> intruder fondled [the victim's] vagina. As the struggle continued, [the
> victim] told the intruder that if he raped her, she could die because she

2

was suffering from Parkinson's disease, high blood pressure, and high cholesterol. After hearing this, the intruder ended the attack and left. Before he left, he said, "I'll be back."

Once the intruder left, [the victim] noticed that her phone wires were disconnected and that her underwear had been taken from a laundry basket and hung on various objects throughout the home. The Pennsylvania State Police were called to investigate. Unfortunately, no evidence was found that identified the intruder. The police did find a makeshift mask made from a pair of [the victim's] shorts at the scene, but this was not the mask described by [the victim], and testing did not yield any results.

Seven months later[,] an intruder again entered [the victim's] home. This occurred during the early morning hours of May 31, 2008, while [the victim] was watching television. As she was going to the kitchen, she was attacked in the hallway. At trial, [the victim] identified her assailant as the same person from the 2007 assault. This time, however, the intruder was wearing all black and a ski mask. [The victim] testified that the intruder said, "I'm back. I'm here to finish what I came for before, the first time."  The intruder then grabbed [the victim] and forced her to the ground.  While on the ground, the two wrestled. The intruder fondled [the victim's] vagina, and he removed her underwear.

Fortunately, [the victim] was not living alone when this second assault occurred. In the seven months since the first assault, [the victim] rented a room in her home to [a roommate].  [The victim's] screams for help during the attack awoke [her roommate].  [The roommate] ran out of her room into the hallway. As she did so, the intruder ended the attack and ran out of [the victim's] home.

The Pennsylvania State Police were called a second time to investigate. This time, police discovered two pieces of evidence that identified the intruder as [Vega]. First, police lifted a palm print from a windowsill on the outside of [the victim's] home.  Police found a step stool beneath the window and determined the intruder entered the home at this location. Two experts for the Commonwealth testified that the palm print found matched [Vega's]. While the experts could not determine the exact time [Vega] left this print, one of the experts, [Pennsylvania State] Trooper Phillip Barletto, testified that outdoor elements easily

destroy finger and palm prints, implying the print was fresh. Further, no evidence was presented to provide an innocent explanation why [Vega's] palm print would be on the outside of [the victim's] windowsill when neither she nor [the roommate] knew [Vega] or gave him permission to be at the home.

Second, on the interior windowsill of the same window from which the police lifted the palm print, police found an unopened box of condoms. The condoms were manufactured by Associated Wholesalers, Incorporated. Police contacted Associated, who advised they distributed condoms of the type found in a Convenient Food Mart in Palmerton. Sales receipts from this store were obtained[,] which showed that a box of condoms was purchased at 11:14 [p].[m]. on the night of the 2008 assault. Next, police obtained surveillance video from the Convenient Food Mart for the time of this purchase. The video depicted a customer who strongly resembled [Vega] and was wearing a shirt with the words "encendido" printed across the front[,] buying condoms of the same type as those found in the victim's home. Later, police found a shirt matching that in the video in a search of [Vega's] home.

Based on this evidence, on March 27, 2009, the Commonwealth filed a Criminal Complaint against [Vega] for both the 2007 and 2008 assaults. In this [C]omplaint, [Vega] was charged for each date with one count of attempted rape by forcible compulsion, burglary, criminal trespass, and indecent assault. He was also charged with one count of simple assault related to the 2008 assault. A jury trial began on January 7, 2013[,] and ended on January 9, 2013. At its conclusion, the jury found [Vega] guilty of all charges.

. . .

. . . [Vega] was . . . sentenced to an aggregate [term] of thirteen to thirty-one years' incarceration in a state correctional facility. [Vega] was then thirty years old. The sentence was made consecutive to sentences [Vega] was then serving in Northampton and Lehigh counties for similar offenses. At the time of sentencing, [Vega] was also serving a forty-six-month sentence in a federal penitentiary.

4

> On May 10, 2013, [Vega] filed a timely post-sentence [M]otion[,] which was denied by [O]rder dated September 3, 2013.

*Commonwealth v. Vega*, No. 1692 EDA 2020, 2021 WL 2021024, *1–2 (Pa. Super. 2021) (quoting *Commonwealth v. Vega*, 104 A.3d 49 (Pa. Super. 2014)).

Petitioner filed a *pro se* PCRA petition in the Carbon County Court of Common Pleas on October 22, 2015, and the PCRA court appointed him counsel. *Vega*, 2021 WL 2021024 at *3. The appointed counsel filed a petition to withdraw with a "no-merit" letter under *Turner/Findley*. *Id*. The PCRA court accepted the motion to withdraw and appointed new counsel for Petitioner. *Id*. This attorney filed an amended PCRA petition, which was dismissed by the PCRA court. *Id*. Petitioner filed a timely notice of appeal along with a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. *Id*. On May 20, 2021, the Superior Court of Pennsylvania addressed the issue of ineffective assistance of counsel for failing to call an alibi witness, and affirmed the Court of Common Pleas' order dismissing the PCRA petition. *Id*.

Petitioner has now apparently raised the same issue in his § 2254 petition for habeas corpus. (Doc. 1, p. 5) (acknowledging that the only issue raised in the state court proceedings was ineffective assistance of counsel). As summarized above, the petition itself lacks specificity regarding all the grounds raised by Petitioner, but instead attempts to reserve the right to amend the petition later. (Doc. 1.) While Petitioner filed a motion to amend, this motion was not supported by a brief

in support or a proposed amended petition, as required under Local Rules 7.5 and 15.1.  Therefore, the court will deem the motion withdrawn.  However, the parties briefed the petition as if it addressed the issue of ineffective assistance of counsel.  (Docs. 16, 23.)  Therefore, the court will now liberally construe the petition consistent with the briefing and address the ineffective assistance of counsel challenge.

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced.  28 U.S.C. § 2241(d).  Petitioner was convicted and sentenced in Carbon County, Pennsylvania, which is located in this district.  *See* 28 U.S.C. § 118(b).  Therefore, venue in this district is proper.

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings."  *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for

defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.*  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## DISCUSSION

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI.  The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the

right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. 466 U.S. at 687. "*Strickland's* first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the

circumstances[.]'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland*, 466 U.S. at 687. To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner

was not prejudiced without addressing whether counsel's performance was deficient.  *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one."  *Premo v. Moore*, 562 U.S. 115, 122 (2011).  And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Harrington*, 562 U.S. at 105.  When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'"  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*

In addressing Petitioner's specific claim of ineffective assistance of counsel, the Superior Court applied the governing test for ineffective assistance of counsel claims announced by the Pennsylvania Supreme Court in *Commonwealth v.*

*Pierce*, 527 A.2d 973 (Pa. 1987) as well as that announced by the United States

Supreme Court in *Strickland*. *Vega*, 2021 WL 2021024 at *7–13.[2]

The crux of Petitioner's argument is that his trial counsel was ineffective for

failing to call his girlfriend, Ballas, at the time of the alleged offenses to provide an

alibi. *Id*. The evidence was summarized by the Superior Court:

> A hearing on Defendant's Petition was held on August 29, 2018. At
> this hearing, Ballas was the sole witness called by Defendant. Ballas
> testified that she first met Defendant at a party at Defendant's cousin's
> home on October 20, 2004, that they began a romantic relationship
> shortly thereafter, and that they were living together in an apartment in
> Emmaus, Pennsylvania at the time of both the October 21, 2007, and
> May 31, 2008, incidents. (N.T., 8/29/18, pp.12-14, 26). Ballas also
> testified that October 20, 2007, was a Saturday, that she and Defendant
> spent the entire weekend together - this being the third anniversary of
> their meeting - and that other than Defendant leaving for approximately
> fifteen minutes late Saturday to purchase some cigarettes, they were
> together the entire time. (N.T., 8/29/18, pp.11, 15-17). This apartment,
> Ballas testified, was a thirty-five to forty-minute drive from [the
> victim's] home. (N.T., 8/29/18, p.17).
>
> As to May 31, 2008, Ballas testified that she tried telephoning
> Defendant unsuccessfully two times on May 31, 2008 - at 12:41 A.M.
> and 12:49 A.M. - before he returned her call at 1:10 A.M. (N.T.,
> 8/29/18, pp.32-33). Defendant's cell phone records, which were
> provided to the defense in response to discovery and which Ballas
> referred to in her testimony, show a forty-nine-second phone call from
> Defendant to Ballas at 1:10 A.M. with the cell phone signal connecting
> with a cell tower at 3880 Lehigh Street, Whitehall, Pennsylvania, a
> distance of approximately seventeen miles from [the victim's] home,
> with a driving time of approximately fifteen to twenty-five minutes.

---

[2] The Superior Court of Pennsylvania sets forth the *Pierce/Strickland* standard as requiring three
factors: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an
objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act."
*Vega*, 2021 WL 2021024 at *7.

(N.T., 8/29/18, pp.26-27, 30-33, 42-46, 125-26, 130; Defendant Exhibit No.1). Accepting the premise that the cell tower used to transfer Defendant's cell phone signal was the one closest to his location at the time of the call, Defendant argued it was physically impossible for him to have been in [the victim's] home at the time [the victim] stated (*i.e.*, approximately 1:00 A.M.) and to have also driven a distance of seventeen miles to make this call.

Ballas testified she told [trial counsel] several times what she knew about Defendant's whereabouts at the time of each offense with which he was charged, about her review of Defendant's cell phone records with [trial counsel], and that the cell phone records were ones [trial counsel] received in discovery from the Commonwealth. (N.T., 8/29/18, pp.20-23, 26, 29-30, 43, 69-70; Defendant Exhibit No.1 (cell phone records)).

Attorney Watkins, Defendant's trial counsel, testified at the PCRA hearing as a witness on behalf of the Commonwealth. He was not present in the courtroom when Ballas testified. Watkins admitted speaking with Ballas on several occasions - both in person and on the phone - and discussing the phone call from Defendant to Ballas on May 31, 2008, and using the cell phone tower through which the call was transmitted as a means of determining Defendant's location, but had no recollection and appeared doubtful of ever being told that Ballas was with Defendant in Emmaus on October 21, 2007. (N.T., 8/29/18, pp.79-82, 100-101, 104, 107-108, 111-115, 119-120, 122). Watkins acknowledged that given the passage of time, he did not have an independent recollection of every detail of what Ballas told him (N.T., 8/29/18, pp.91, 105), and agreed that Ballas was ready, willing and able to testify on Defendant's behalf.

When questioned about why he did not call Ballas at trial as an alibi witness for the October 21, 2007, assault and to cast doubt on Defendant's whereabouts for the May 31, 2008, assault, Watkins testified it didn't fit his theory of the defense: to highlight the generic description of the intruder given by [the victim] and how non-specific it was; to force the Commonwealth to prove Defendant was in [the victim's] home and not somewhere else at the time of the assault; and to challenge the Commonwealth's theory that Defendant entered and exited [the victim's] home through a window too small for a person of

his size, without leaving any fingerprints or clothing fibers. (N.T., 1/7/13, pp.22, 95-96; N.T., 1/9/13, pp.306, 308-310; N.T., 8/29/18, pp.82-83, 90-92). Watkins had a plan to discredit the palm print evidence and cast doubt on the significance of the pictures taken by the security camera at the convenience store. (N.T., 1/7/13, pp.51-52, 90-91; N.T., 1/8/13, p.232; N.T., 1/9/13, pp.307-308; N.T., 8/29/18, pp.22, 25, 44, 46-47, 93-94). He did not want to present any evidence that Defendant was out of his home on May 31, 2008, at a time when he would have been capable of committing the assault, and Ballas had him out at 1:10 A.M. and earlier given the two phone calls she made preceding this return call. (N.T., 8/29/18, pp.82-83, 85, 90-92, 112-116, 119). Watkins also testified he discussed with Defendant his concerns about calling Ballas as a witness and use of Defendant's cell phone records, and that Defendant was in agreement with his decision not to call Ballas. (N.T., 8/29/18, pp.94-95).

*Id*., at *6–7.

First, the Superior Court found that Petitioner's appeal had arguable merit as there were only two witnesses to the October 21, 2007 assault – the victim and the assailant. *Id*. at *8. Therefore, based on the general description of the assailant provided by the victim, Petitioner's argument of an alibi has "arguable merit." *Id*. However, the Superior Court did not find Ballas' testimony about an alibi for October 21, 2007 as credible. *Id*. at *9. As to the cell phone tower records and the May 31, 2008 allegations, the Superior Court found that Ballas' testimony was "speculative and unreliable." *Id*. at *10.

Likewise, the Superior Court found that there was a reasonable basis for trial counsel's decision to not call Ballas as an alibi witness. *Id*., at *11–12. At the PCRA hearing, trial counsel testified that his decision to not introduce the alibi

information and have Ballas testify was tactical.  *Id*.  He stated that he did not want

to introduce evidence confirming that Petitioner was out of his home on the nights

of the alleged offenses and, thus, strengthen the prosecution's case.  *Id*. at *11.

Additionally, counsel stated that he was aware that Ballas providing alibi

testimony for Petitioner would introduce evidence of Petitioner selling drugs,

"which, if made known to the jury, would be devastating."  *Id*.  Furthermore, trial

counsel testified that Ballas and the allegations and evidence linking Petitioner to

the Carbon County assaults was placed in evidence under Pa.R.E. 404(b)(2) based

on Ballas' testimony in a Lehigh County trial five months prior, and the testimony

in the Carbon County trial was of no benefit.  *Id*.  Therefore, the Superior Court

found that "[t]he dilemma [trial counsel] faced on whether to call Ballas as a

witness was not an easy one.  Under the circumstances the choice made, to forgo

Ballas' testimony, had a reasonable basis and the alternative, to have Ballas testify,

did not offer a significantly greater potential chance for success."  *Id*. at *12.

Finally, the Superior Court found that Petitioner was not prejudiced by trial

counsel's decision to not call Ballas and present the alibi testimony.  *Id*.  The

Superior Court found that Ballas' testimony could not determine Petitioner's

location at 1:10 am on May 31, 2008.  *Id*. at *13.  Further, it found that "Ballas'

testimony had the potential of undermining the defense strategy at its core,"

because of Ballas' definitive identification of Petition in the surveillance video at

14

the convince store purchasing condoms and her knowledge that Petitioner was

actively engaged in dealing drugs in the Palmerton area the night of the assault. *Id*.

Therefore, the Superior Court found that Petitioner had not met his burden

regarding the final *Stickland* factor that there was a reasonable probability that the

jury's verdict would have been different with Ballas' testimony. *Id*.

Considering that the Superior Court applied the *Strickland* factors, this court

is tasked solely with determining whether or not the state court's application of the

factors was reasonable. *Knowles*, 556 U.S. at 123. However, Petitioner fails to

discuss the reasonableness of the Superior Court's determination, but instead,

reasserts his ineffective assistance of counsel argument. (Doc. 23.) Petitioner

makes a general assertion that the PCRA court "errored by denying the PCRA

before the court examined and Petitioner had the opportunity to cross examine trial

counsel as to what Petitioner and him discussed," regarding the alibi evidence.

(*Id*., p. 14.) However, the PRCA trial transcript shows that trial counsel was cross

examined about what he and Petitioner discussed regarding alibi evidence. (Doc.

16-3, pp. 100–08.) Trial counsel did not have his case notes and could not recall

where Petitioner reported he was on the nights of the alleged offenses, and could

not recall conversations with Petitioner and Ballas. (*Id*.) To the extent that

Petitioner is arguing that the PCRA court erred by not waiting to make a

determination until trial counsel's notes were supplied and a second hearing was

held to cross examine trial counsel about those notes, the court finds the argument unpersuasive.  As the Superior Court pointed out in the PCRA appeal decision, the burden was on the Petitioner to demonstrate that the jury's verdict would have been different, that is, that the absence of Ballas' testimony denied Petition of a fair trial.  Petitioner did not meet that burden.  *Vega*, 2021 WL 2021024 at *13.  Therefore, regardless of trial counsel's recollection of their conversations regarding an alibi defense, Petitioner cannot prove the second prong of prejudice and, therefore, cannot succeed on an ineffective assistance of counsel claim.  Therefore, the court finds that the state court's application of the *Strickland* factors was reasonable and will dismiss the habeas corpus petition.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  "When the district court denies a habeas petition on procedural grounds

without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, no COA will be issued.

### CONCLUSION

For the reasons set forth above, the court will deem the motion to amend the petition withdrawn and dismiss the petition for writ of habeas corpus.

A separate order will be issued.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 7, 2023